Eric Stephenson (9779)
STEPHENSON LAW FIRM
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
(844) 529-2112
eric@utahjustice.com

*Attorney for Petitioners*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SCOTT RILLEY, MICHELLE KUNZA, KENDRA BUETTNER, JONATHAN ALDRICH, AND VENUS COLQUITT-MONTGOMERY,<br><br>Petitioners,<br><br>vs.<br><br>MONEYLION OF UTAH LLC,<br><br>Respondent. | MOTION TO ENFORCE SUBPOENA<br><br>Case Number:<br><br>Judge: |

## **MOTION**

Pursuant to Fed. R. Civ. P. 45, Movants Scott Rilley, Michelle Kunza, Kendra Buettner, Jonathon Aldrich, and Venus Colquitt-Montgomery ("Plaintiffs" in the underlying District of Minnesota action, referred to herein as such) respectfully move the Court for an order to compel production of documents pursuant to a subpoena served on non-party MoneyLion of Utah, LLC ("MoneyLion") in the pending class action case, *Rilley, et al. v. MoneyMutual, LLC, et al.*, Case No. 16-cv-04001-DWF-LIB (D. Minn.).[1] Despite various attempts to resolve disputes regarding the subpoena, MoneyLion has refused to comply and has not produced a single document. Plaintiffs therefore seek an order compelling production of the requested documents.

---

[1] A copy of the operative Second Amended Complaint ("Second Am. Compl.") and the subpoena are attached to the Declaration of John G. Albanese ("Albanese Decl.") as Exhibits A and B.

## MEMORANDUM

## BACKGROUND

Defendants in the underlying action (MoneyMutual, LLC, Selling Source LLC, and PartnerWeekly, LLC) operate an online lead generation business for online high-interest, short-term or payday lenders through the website www.moneymutual.com. (Second Am. Compl. ¶¶ 33-50.) Defendants advertise heavily on television and online using celebrity spokesperson Montel Williams. (*Id.* ¶ 37.) When a consumer visits the MoneyMutual website, the consumer fills out an application, including the consumer's name, address, and other information. (*Id.* ¶¶ 42-43.) The consumer's information is auctioned off to Defendants' network of online lenders. The consumer is redirected to the lender's website to consummate the loan transaction. (*Id.* ¶¶ 43-45.) In general, Defendants enter into lead purchase agreements with the lenders, and each lead is sold pursuant to parameters set forth in Lead Purchase Insertion Orders. (Albanese Decl., Ex. C, Plaintiffs' Mem. in Supp. of Class Cert. at 4-8 (generally describing how leads are sold through MoneyMutual website).)

Defendants have produced a spreadsheet showing the leads that were sold, when those leads were sold, and to which lender those leads were sold. (Albanese Decl. ¶ 3.) Defendants, however, have averred that after a lead is sold, they have no knowledge and possess no information about whether a loan transaction is consummated, the terms of any transactions, or the payments made on any transaction. (*Id.* ¶ 4.) One of the lenders in Defendants' network is non-party MoneyLion of Utah, LLC. It appears that MoneyLion is not licensed to make loans by the state of Minnesota. (*Id.* ¶ 5.) MoneyLion, however, nevertheless made loans to Named Plaintiff Jonathon Aldrich and other Minnesotans based on leads bought from Defendants. (Second Am. Compl. ¶¶ 111-117.) Defendants' spreadsheet shows that 32 Minnesota leads were sold to MoneyLion. (Albanese Decl. ¶ 6.) From the spreadsheet, it appears that MoneyLion began purchasing Minnesota leads from Defendants in 2016. (*Id.*).

Plaintiffs allege, on behalf of a class of Minnesota consumers, that Defendants have violated numerous Minnesota laws, including that Defendants illegally arranged loans to lenders not licensed by the Minnesota Department of Commerce. (Second Am. Compl. ¶¶ 20-26, 135-138 (alleging violation of Minn. Stat. § 47.601).) Plaintiffs seek relief, including damages, on behalf of a putative class of all other Minnesotans for whom Defendants arranged illegal loans. Some of Plaintiffs' claims require that the loan be under $1,000 and contain certain repayment terms in order to be actionable. *See* Minn. Stat. 47.601 subd. 1(d) (defining "consumer short-term loan" as of "$1,000 or less" requiring a "minimum payment within 60 days of loan origination . . . of more than 25 percent of the principal balance").

Because Defendants are not in possession of the specific loan information, including loan agreements and transaction histories, Plaintiffs have issued approximately 100 subpoenas total to each of the lenders to which Defendants sold leads. On November 7, 2017, Plaintiffs served a production subpoena on MoneyLion. (Albanese Decl. Ex. E.) On December 4, 2017, counsel for MoneyLion responded asserting numerous procedural and substantive objections to the subpoena. (Albanese Decl., Ex. D.)

On December 21, 2017, Plaintiffs conferred with counsel for MoneyLion to address MoneyLion's objections. Plaintiffs addressed certain purported procedural issues identified by MoneyLion and served an amended subpoena, but making the same document requests as the original, on March 12, 2018. (Albanese Decl., Ex. B.) The subpoena generally requested the following documents: (1) all loan agreements and transaction histories between MoneyLion and Minnesota consumers where MoneyLion had purchased the consumer's lead from Defendants; (2) communications and contracts with Defendants; (3) any licenses that MoneyLion has with the state of Minnesota; and (4) all agreements that MoneyLion had with credit reporting agencies or bank payment processors. (Albanese Decl. Ex. B.) MoneyLion responded on March 26, 2018, asserting the same objections to the subpoena. (Albanese Decl., Ex. F.) On April 4, 2018,

in a final attempt to resolve the matter, Plaintiffs wrote to counsel for MoneyLion and offered to modify the subpoena, including a substantial narrowing of the document requests.  (Albanese Decl., Ex. G.)  Plaintiffs conferred again with counsel for MoneyLion on April 13, 2018, but no compromise was achieved.  Plaintiffs now bring this motion to compel production pursuant to Federal Rule of Civil Procedure 45.  Discovery in the underlying matter is ongoing and discovery closes on March 2, 2019.

## ARGUMENT

Under Fed. R. Civ. P 45, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  "The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."  *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785, 2018 WL 4302321, at *2 (D. Kan. Sept. 10, 2018).  Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "[T]he party resisting discovery . . . [has] the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."  *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002).  "This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents."  *Id.*

As described below, each of the document requests at issue seeks relevant, non-burdensome discovery from MoneyLion, and MoneyLion's unsubstantiated objections are unavailing.

1.      Loan Agreements and Payment History

Plaintiffs' first two document requests seek loan agreements and payment histories for loans made by MoneyLion to Minnesota residents after purchasing leads from Defendants. (Albanese Decl., Ex. B, Req. Nos. 1 & 2.)  The documents are relevant to Plaintiffs' claims against Defendants and purportedly are not in the possession of the Defendants.  As explained above, only certain types of loans are prohibited under Minnesota law.  As a result, the terms of and consummation of the loan are relevant to liability.  Similarly, the payment histories are relevant to damages.

MoneyLion's objections to these requests are unsubstantiated.  MoneyLion complains without any support that Plaintiffs' requests "would literally require scores of person-hours" to conduct a search for loan agreements with Minnesotans facilitated by Defendants.  (Albanese Decl. Ex. F.)  This argument is unavailing.  First, Plaintiffs' counsel offered to provide MoneyLion the identities of the 32 Minnesota consumers about whom Defendants sold leads to MoneyLion as long as MoneyLion would sign the protective order entered in the *Rilley* matter. Further, MoneyLion's argument that it would take "scores of person-hours" to conduct a search is hard to believe.  The argument seemingly assumes that MoneyLion, a company which makes loans over the internet, keeps all of records in unorganized fashion rather than in easily searchable electronic records.  Plaintiff Aldrich, for instance, was able to access his payment history through MoneyLion's online portal.  (Albanese Decl., Ex. H.)  There is no burden to producing these documents.  They are relevant and should be produced.

2.      Contracts and Communications with Defendants.

Plaintiffs requested contracts or agreements that MoneyLion has had with the Defendants. (Albanese Decl., Ex. B, Req. No. 4.)  These documents are relevant to Plaintiffs' claims that Defendants arranged for loans between Minnesota consumers and MoneyLion. MoneyLion has not articulated how this request is at all burdensome.  While Defendants have

produced some agreements with MoneyLion, Plaintiffs suspect that not all relevant documents have been produced. For example, Plaintiffs do not believe that the Lead Purchase Insertion Order that governed the sale of Plaintiff Aldrich's lead from Defendants to MoneyLion has been produced by Defendants. (Albanese Decl. ¶ 7.) Plaintiffs are thus entitled to request that MoneyLion produce such agreements.

Plaintiffs have also requested MoneyLion's communications with Defendants "relating to this lawsuit, the legality of your loans, your legal status as a lender, any registrations or certifications held by you, any code of conduct applied by MoneyMutual or its affiliates to you, complaints regarding loans, any contracts or agreements between you and MoneyMutual, LLC, PartnerWeekly, LLC, or Selling Source, LLC, or any other lawsuits involving lending." (Albanese Decl., Ex. B, Req. No. 5.) These communications are relevant to Plaintiffs' claims that Defendants arranged for loans with unlicensed lenders and are also relevant to whether Defendants knew that MoneyLion was not a licensed lender in Minnesota.

MoneyLion's burden arguments are once again unsubstantiated and overblown, claiming that it "would require hundreds of person-hours to review" documents relevant to this request. (Albanese Decl., Ex. F.) Communications, such as emails, are readily searchable and retrievable, and in all likelihood MoneyLion had only one or two people who communicated with Defendants. These documents should be produced.

   3.   <u>Lending Licenses.</u>

Plaintiffs request any licenses to lend that MoneyLion has or has had in the state of Minnesota. (Albanese Decl., Ex. B, Req. No. 6.) Licenses are relevant to Plaintiffs' claim that Defendants arrange loans with unlicensed lenders. There is no burden on MoneyLion in responding to the request as any documents, if they exist, should be readily available.

    4.    <u>Agreements with Payment Processors or Banks.</u>

Plaintiffs also seek MoneyLion's agreements with payment processors and credit reporting agencies. (Albanese Decl., Ex. B, Req. Nos. 4 & 7.) These requests are fallback requests designed to identify other parties with potentially relevant payment history information related to MoneyLion loans in the event MoneyLion does not have the loan agreements and payment history information. If MoneyLion can produce the documents requested in Request Nos. 1 and 2, Plaintiffs are willing to forego these documents. In any event, there is minimal burden in responding to these requests.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted and MoneyLion should be ordered to produce documents in response to Plaintiffs' subpoena.

DATED 9/24/2018

/s/ Eric Stephenson
*Attorney for Petitioners*

— 8 —

CERTIFICATE OF SERVICE

    I hereby certify that on 9/24/2018 I filed the foregoing MOTION TO ENFORCE SUBPOENA through this court's electronic filing system which automatically notifies counsel of record for the Defendants.

                      /s/ Eric Stephenson
                      *Attorney for Petitioners*